CHARLES GAY *v.* HAIKU FRUIT AND PACKING COMPANY, LIMITED.

No. 1733.

RESERVED QUESTION FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. F. ANDRADE, JUDGE.

ARGUED MARCH 7, 29, 1927.                    DECIDED MARCH 31, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

EQUITY—*accounting—discovery.*

A court of equity will not enjoin an action at law and remove the controversy to its own jurisdiction on the ground that it involves an accounting between the parties in the absence of a showing that the accounts are mutual or so lengthy and complicated that a court of law cannot adequately disentangle them. Nor will a court of equity assume jurisdiction on the ground of a discovery in the absence of a showing that the complainant is so ignorant of the facts that he cannot ascertain the state of the account without a disclosure by the respondent.

SAME—*jurisdiction—unliquidated damages.*

In the absence of an averment of the insolvency of the respondent it is not a ground for equitable relief that the complainant has a claim against the respondent for unliquidated damages which he cannot set off against a claim upon which the respondent has brought suit against him in a court of law.

SAME—*chattel mortgage—cancellation.*

A bill in equity cannot be maintained for the purpose of cancelling a mortgage on crops of pineapples in the absence of averment that the mortgage was at the time suit was brought a subsisting lien on the property mortgaged and that such property was then in existence.

OPINION OF THE COURT BY BANKS, J.

The complainant brought a bill in equity against the respondent. The bill was amended and to the amended bill the respondent interposed a demurrer. The circuit judge being in doubt as to what his action on the de-

murrer should be reserved the following question to this court: "Should the demurrer of the respondent to the amended bill of complaint be sustained upon any ground stated in said demurrer?"

According to the allegations of the amended bill the complainant is the owner of certain lands on the Island of Lanai upon which he grows pineapples and the respondent is engaged in the business of canning pineapples on the Island of Maui. On the 12th day of February, 1921, the complainant and the respondent entered into a contract, in writing, for the sale and purchase of pineapples to be delivered by the former to the latter at certain prices. Later, on or about the month of June, 1923, the contract was modified by mutual consent, the modification being that the complainant, instead of delivering the pineapples on the Island of Maui as had been originally agreed, would deliver them at Manele, on the Island of Lanai, and from there they would be transported on respondent's boats to Kahului, on the Island of Maui. At the time the agreement of February 12, 1921, was made the respondent also agreed that, in order to enable the complainant to properly plant and cultivate his pineapples, it (the respondent) would advance sums of money to the complainant. In pursuance of this agreement the respondent did advance such sums of money until they aggregated the total sum of $12,000. The respondent then requested the complainant to give security for this amount. In compliance with this request the complainant executed and delivered to the respondent a mortgage upon the crops of pineapples. After this mortgage was given the respondent continued to make advances to the complainant and for each amount advanced the complainant gave to the respondent his promissory note to cover the same. Although these

notes were in form absolute it was understood between the complainant and the respondent that they were to be paid on a general accounting between the parties settling their dealings under the agreement of February 12, 1921. The complainant continued to deliver pineapples to the respondent under this agreement until the month of July, 1925. On the 3d day of July, 1925, it was agreed by the complainant that the respondent should take over the fields of pineapples and care for and harvest the crops growing and maturing thereon during the 1925 season, the complainant agreeing that he would transport the pineapples so harvested to the landing at Manele. In pursuance of this agreement the respondent took over complainant's fields and harvested and took all the pineapples which matured thereon and the complainant transported them to Manele until the latter part of February, 1926, after which time the respondent refused to carry on.

The respondent, after taking over the cultivation and harvesting of the pineapples, neglected and failed to properly care for the fields or the crops growing and maturing thereon and neglected to cultivate or spray the fields. As a result of this failure the fields were overgrown with weeds, thereby greatly injuring the crops maturing in the 1925 season and the ratoon crops of the next succeeding season, to the complainant's damage in the sum of $53,000. The records and accounts of the quantity and kind and value of the pineapples delivered by the complainant to the respondent and those harvested by the respondent under the agreement of July 3, 1925, were kept by the respondent and are matters particularly within the knowledge of the respondent. The complainant has received from the respondent no statement of account of the respective debits and credits relative to the pineapples sold to the respondent since

March 31, 1925, nor any statement of the cost of transporting said pineapples. On the 17th day of March, 1926, the respondent brought suit in the second judicial circuit against the complainant on the promissory notes given by the complainant for the advances made to him by the respondent. The amount claimed in this suit less certain credits is $36,304.58, together with interest, attorney's commissions and costs of court. This suit is still pending and undetermined. The complainant alleges that he is unable to set off his claim for damages, growing out of the respondent's neglect to properly cultivate the crops of pineapples, against said respondent in said action at law nor is he able to recoup his said damages in said action for the reason that his claim is for unliquidated damages and is in excess of respondent's claim in said action at law. Prior to the institution of the present suit the complainant demanded of the respondent that it make and state an account with the complainant and that it pay the balance due thereon. The respondent refused to accede to this demand. It is alleged in the bill "that the giving of the aforesaid mortgage and promissory notes, the planting contract Exhibit 'A', the modification thereof, the taking over of the complainant's pineapple fields by the respondent's mortgagee, were all intended to be settled in a general accounting between the parties, and a court of equity, to avoid circuity of action, alone can do complete justice in the premises." The complainant agrees and offers to pay in an accounting between himself and the respondent whatever amount may be due from him to it. The prayer of the bill is for an injunction restraining the respondent from prosecuting his action at law, for an accounting and for general relief.

The respondent demurred to the bill on several

grounds. We think all of the questions presented in the briefs and in the argument of counsel may be considered under the first ground of the demurrer. This ground is that "said amended bill of complaint does not state facts sufficient to entitle complainant in a court of equity to the relief prayed for, or any relief against this respondent." The equity of the amended bill being thus challenged we must, determine whether it contains any allegation of facts which would authorize a court of equity to enjoin the action at law that was pending at the time the instant suit was brought and thus remove the controversy from a court of law to a court of equity. A court of equity will ordinarily not do this unless the party seeking the removal presents some reason sufficient in law or fact why his rights cannot be completely and adequately adjudicated in the law action. The mere existence of mutual demands between the parties is not alone sufficient. Courts of law are often called upon to adjudicate rights arising from such circumstances and are not at all inadequate for such purpose. Under well settled principles of equity jurisdiction to justify the substitution of a court of equity for a court of law on the ground of an accounting there must exist mutual accounts between the parties, or if the accounts are not mutual but only an account on one side, it must be so intricate and complicated that it cannot be adequately disentangled and clearly presented in an action at law or the party seeking an accounting in equity must be so ignorant of the items composing the account as to entitle him to a detailed disclosure in an answer to a bill in equity. The amended bill of complaint does not show such a mutuality of accounts between the complainant and the respondent as would justify the substitution of a suit in equity for the pending action at law. It is true

there were reciprocal transactions between the parties, growing out of their agreements with each other, and reciprocal liabilities resulting from these transactions. The complainant sold and delivered to the respondent pineapples at fixed prices and over a certain period of time, on account of which the respondent became indebted to the complainant. The respondent, on its part, made advances to the complainant of various sums of money which the complainant is obligated to repay. Evidence of these sums of money advanced was not, however, left to mere book entries, which might give rise to uncertainty and controversy, but as each sum was advanced it was evidenced by the promissory note of the complainant. All this appears from the amended bill. There is no question, therefore, of an accounting between the parties so far as these advances are concerned. They are easily and exactly ascertainable from the complainant's own written acknowledgments and his written promises to pay and they form the basis of the action at law now pending. The complainant does not dispute these amounts but seeks an accounting in order to ascertain what the respondent owes him for pineapples sold and delivered in order that he may set off such amounts against what he owes the respondent. To ascertain the amount of this set-off it is only necessary to examine and audit the account showing the quantity and value of the pineapples sold and delivered to the respondent. There is, therefore, lacking that mutuality of accounts upon which equitable relief is so often predicated.

Neither can the complainant's contention that he is entitled to an accounting in equity because the accounts are so complicated that a court of law is incapable of properly investigating them be sustained. There is no averment in the amended bill upon which this contention

can be based. It nowhere appears that an ordinary inspection of the records in which the transactions were recorded will not readily disclose the times when pineapples were sold and delivered, the quantity and value of each delivery and the cost of transportation. These are the facts which the complainant wishes to ascertain and there is no apparent reason why he cannot obtain this information just as well and just as completely in the pending law action as in a suit in equity.

Complainant's contention that he is entitled to a discovery in equity is likewise without merit. It is true that he alleges in his amended bill that the records and accounts in which the sales and deliveries of pineapples appear were kept by the respondent and are in its possession and that it has refused to make him an accounting. This alone is insufficient to entitle the complainant to a discovery. He must go further and show that he is ignorant of the facts necessary to a computation of the amount which the respondent owes him for pineapples sold and delivered and that the respondent alone is in possession of these facts and that he has no means of ascertaining them other than through the answer of the complainant to a bill in equity. Instead of making such allegations it affirmatively appears from the amended bill that the prices of the pineapples were fixed by written agreement and that they were delivered by the complainant himself. This negatives the idea that he is ignorant of the facts which he seeks to compel the respondent to disclose. It is true that he alleges that these facts are "particularly" within the knowledge of the respondent and that he cannot "conveniently" make his defense of set-off or counterclaim without a disclosure from the respondent. This falls far short of entitling him to the aid of equity by way of discovery. If he had presented a case of

entire dependence upon the respondent for information necessary to his defense in the action at law the situation might be different.

We come now to the consideration of another phase of the case. It is alleged that on the 3d day of July, 1925, the respondent, by and with the consent of the complainant, took possession of the fields on which complainant's pineapples were planted, for the purpose of cultivating and harvesting said pineapples, and that respondent did the cultivating and harvesting in such a negligent and improper manner that the complainant was damaged in the sum of $53,000 and therefore he has a valid claim against the respondent for that amount but that his claim is for unliquidated damages and inasmuch as it is larger than the respondent's claim against him he cannot plead it by way of set-off or recoupment in the pending action at law without surrendering so much of it as will reduce it to an amount equal to or less than the respondent's claim against him. The complainant contends that these averments entitle him to have the action at law enjoined and the controversy removed to a court of equity in order that he may set off his claim in full against the respondent's claim and if it should turn out that his is the larger he may have a decree against the respondent for the excess. We know of no principle of equity that sustains this contention. The respondent has a right to have its action at law tried before a jury and a court of equity will not interfere with its exercise unless it is necessary to do so in order to secure to the complainant a right of which he would otherwise be deprived. According to the allegations of the amended bill which we are now considering the complainant is in no such dilemma. He may go into a court of law and recover of the respondent whatever damages he is able to prove. If he should

recover judgment against the respondent before respondent recovers judgment against him, he could set off his judgment against the respondent's judgment and thus receive ample protection. It is a well settled principle that judgments in cross-actions, when the parties in interest are the same, may, on motion addressed to the court in which one or both of the actions are pending, be set off one against the other. *Lopez* v. *McChesney*, 10 Haw. 225 (Opinion of Whiting, Circuit Judge, 228). It also seems to be firmly established that, if the respondent should prosecute his pending action at law to judgment before the complainant obtains judgment on his claim for damages, the latter may, on proper motion, have execution against him stayed until he can reduce his claim to judgment and thus be in position to set off one judgment against the other. The law on this subject is stated in 34 C. J., p. 704, as follows: "When the party claiming the benefit of a set-off cannot avail himself of the right in the trial of the action, the cause may be continued or execution stayed, if justice so requires, until the claimant obtains judgment, which may then be set off against the other." Several cases are cited in support of the text. The circumstances under which this relief will be granted and the appropriate procedure for obtaining it are fully set forth in the cases.

If it had been alleged in the amended bill that the respondent was insolvent and that unless the complainant was permitted to establish his claim for damages as a set-off or counterclaim against the respondent's claim against him on the promissory notes he would lose the benefits of his claim, it is conceivable that a court of equity, in the exercise of its great function to prevent injustice, would take jurisdiction of the entire controversy.

There is still another question to be considered which arises out of the allegation in the amended bill, that the complainant executed to the respondent a mortgage on pineapples then growing on complainant's lands or to be thereafter grown on said lands as security for advances already made to complainant or that might subsequently be made, and the further allegation that the sum total of complainant's claims and demands against the respondent, including his claim for damages resulting from the improper manner in which the respondent cultivated the pineapples during its occupancy of complainant's fields, is greater than respondent's claim against him for money advanced.

As we understand the complainant's contention it is that he is in the position of a mortgagor who seeks to redeem or have the mortgage cancelled on the ground that the sum total of his claims against the respondent is more than sufficient to offset the debt for which the mortgage was given as security and that in order to avoid circuity of action he is entitled to establish his claims in this proceeding and, upon doing so, to have the lien of the mortgage removed. It does not appear, however, from the amended bill that there was in existence at the commencement of the instant suit any property belonging to the complainant or in which he had any interest that was covered by the mortgage or that there would ever come into existence any such property. The mortgage was given not on the complainant's land but on pineapples produced and to be produced on the land. It appears from the amended bill that all the pineapples produced from the time the mortgage was given up to February 9, 1926, were sold and delivered to the respondent under the contract between the parties. These pineapples thus became the absolute property of the respondent and the complainant

had no further interest in them. It is true that in the allegation of the respondent's improper cultivation of the crop of 1925 there is a statement that the ratoon crop of the following season was injured. This is not the equivalent of an allegation that the ratoon crop was on the land at the time this suit was instituted and therefore subject to the mortgage. So far as we are advised to the contrary the mortgage is and will remain innocuous and therefore there is no necessity for its cancellation.

Aside from this defect in the amended bill, as a bill to cancel the mortgage it is deficient in other respects. It nowhere appears that the respondent asserts any claim to the property covered by the mortgage or that he threatens to assert any claim. For aught that appears to the contrary the respondent has already relinquished his rights as mortgagee—in which event the mortgage is no longer a cloud on complainant's title. The whole structure of the amended bill shows that its purpose was not to have the mortgage cancelled, but to secure the aid of equity in an accounting between the parties. For the reasons already given it cannot be maintained for this purpose.

The demurrer to the amended bill of complaint should be sustained. The reserved question, therefore, is answered in the affirmative. The complainant, if he desires to do so, should be given leave to offer such amendments to the bill as he deems proper.

*A. Withington* (*Robertson & Castle* on the brief) for complainant.

*W. L. Stanley* (*Smith, Warren, Stanley & Vitousek* on the briefs) for respondent.